**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DMITRIY KARGAPOLOV, | ) | |
| | ) | |
| Petitioner, | ) | No. 3:26-cv-00755 |
| | ) | |
| v. | ) | Chief Judge Cathy Bissoon |
| | ) | |
| LEONARD ODDO, et al., | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM AND ORDER**

**I.      MEMORANDUM**

Now before the Court is Petitioner Dmitriy Kargapolov's Petition for Habeas Corpus

(Doc. 1) (the "Petition" or "Pet.") and Motion for Leave to File a Reply (Doc. 10) as well as

Respondents' Response to Petition of Habeas Corpus (Doc. 9) (the "Response" or "Resp.")

attaching, *inter alia*, the Declaration of Deportation Officer Matthew F. Lenze (Doc. 9-1) (the

"Declaration" or "Decl."). For the reasons that follow, the Petition will be granted as to Count

Three as set forth in the Order below. Petitioner's Motion for Leave to File a Reply will be

denied as moot.

**A. Factual Background**

Petitioner was born in the former Union of Soviet Socialist Republics ("USSR"). Resp.

Ex. 2 (Doc. 9-2) at 3.[1] He was admitted to the United States on or about May 26, 2004, as a B-2

non-immigrant visitor. Decl. ¶ 2. At that time, Petitioner held a Russian passport. Id.

Notwithstanding expiration of Petitioner's visa period on November 26, 2004, he did not depart

the United States. Id. Petitioner has now lived in the United States for nearly 20 years. He has

no criminal history. Id. ¶ 4; see also Resp. Ex. 4 (Doc. 9-4) at 2-3.

---

[1] Pagination in this Memorandum for all documents filed in the instant action refers to the
page number utilized in the cited document's ECF heading banner.

On or about March 13, 2006, an immigration judge ordered Petitioner removed to Russia. Decl. ¶ 4. That order of removal became administratively final on or about December 4, 2007. Id. On January 8, 2010, United States Department of Homeland Security ("DHS") detained Petitioner. Id. ¶ 5. During Petitioner's 2010 detention, DHS proved unable to remove Petitioner to Russia, apparently because he did not hold Russian citizenship.[2] Pet. ¶ 3. More than nine months after his detention began, Petitioner was released on or about October 16, 2010, as DHS Enforcement and Removal Operations continued to pursue travel documents allowing for his removal. Decl. ¶ 5. Notwithstanding the more than 15 years of effort since Petitioner's 2010 detention and release, travel documents to Russia have never been issued. Undeterred by a decade-and-a-half of failure to secure Russian travel documents, and seemingly without any new indicia that travel documents were forthcoming, DHS again detained Petitioner on June 4, 2025. Id. ¶ 7. For now over 11 months, Petitioner has remained in DHS detention at the Moshannon Valley Processing Center. Pet. ¶ 5.

In August 2025, while detained, Petitioner contacted the Russian consulate and requested travel documents. Id. ¶ 19. But the Consulate General of the Russian Federation in New York denied Petitioner's request by letter, dated August 22, 2025 (the "August Letter"), stating that "the issuance of such a document is not possible at this time or in the foreseeable future."[3] Pet.

---

[2] Although it appears that Petitioner held Russian citizenship when he entered the United States in 2004, that is not inconsistent with the fact that he no longer held that citizenship when DHS attempted to remove him in 2010. See, e.g., U.S. Mission Russia, *U.S.-Russian Dual Nationals*, U.S. Embassy & Consulates in Russia, https://ru.usembassy.gov/dual-nationals (last visited May 14, 2026) (acknowledging that Russian citizenship may be renounced). In any event, neither party has shown that Petitioner *currently* holds Russian citizenship. To the contrary, the Russian consulate could not verify Petitioner's status as a citizen, and its consulate in New York gave no indication that inquires into Petitioner's purported Russian citizenship are ongoing. See Pet. Ex. B (Doc. 1-2).

[3] While in custody, Petitioner once apparently refused to complete a travel documents application on or about July 8, 2025, see Decl. ¶ 8, but then sought travel documents shortly thereafter, resulting in the August Letter, see Pet. ¶ 19.

Ex. A (Doc. 1-1).  Petitioner once more requested travel documents from the Russian consulate on or about February 27, 2026.  Decl. ¶ 10.  Again, however, Russia refused to issue them.  Id. By letter dated March 19, 2026 (the "March Letter"), the Russian consulate wrote:  "This [refusal to issue travel documents] is due to the fact that, following official inquiries initiated through the competent authorities of the Russian Federation, it was not possible to confirm that Mr. Kargapolov holds Russian Citizenship.  The request for verification did not return any positive results."  Pet. Ex. B.  Apparently only after the March Letter—nine months after Petitioner's custody began and seven months after the August Letter indicated that travel documents to Russia would not be issued "in the foreseeable future"—did DHS begin exploring the possibility of removing Petitioner to a country other than Russia.  Decl. ¶ 12.  No potential third country to which Petitioner may be removed has yet been identified.  Id.

**B.  Analysis**

Count Three of the Petition asserts that Petitioner's continued detention violates 8 U.S.C. § 1231 as the Supreme Court interpreted it in Zadvydas v. Davis, 533 U.S. 678 (2001).  The Court has jurisdiction to now resolve Count Three,[4] and will not require that Petitioner submit a written request for release to DHS before taking up this count of the Petition.[5]

---

[4] The Court may properly consider this request for relief pursuant to 28 U.S.C. § 2241(c)(3).  See Zadvydas, 533 U.S. at 688 ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

[5] Respondents concede the Court's jurisdiction over the Petition.  See Resp. at 2.  The prudential exhaustion requirement that Respondents claim applies would, in any event, be excused here.  "[E]ven when courts might otherwise require exhaustion, they may excuse it when, for instance, waiver, estoppel, tolling or futility applies.  We also excuse prudential exhaustion when the challenged agency action presents a clear and unambiguous violation of statutory or constitutional rights."  United States v. Dohou, 948 F.3d 621, 628 (3d Cir. 2020) (internal punctuation and citation omitted).  DHS, apparently *sua sponte*, considered and rejected Petitioner's release as recently as March 26, 2026, see Decl. ¶ 11, making any written request for termination of detention now excusable as an exercise in futility.  See Son v. Rose, No. 3:26-cv-00477, 2026 WL 1093354, at *1 n.2 (M.D. Pa. Apr. 22, 2026).  Petitioner's continued detention

Section 1231(a) provides for a 90-day removal period, during which the Attorney General "shall detain" the individual who had been ordered removed.  See 8 U.S.C. § 1231(a)(1)(A), (2)(A).  But once the removal period has passed, continued detention is no longer authorized by statute when "removal is no longer reasonably foreseeable."  Zadvydas, 533 U.S. at 699.  In other words, "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.  It does not permit indefinite detention."  Id. at 689.  Under the Zadvydas framework, a post-removal order detention period of six months is "presumptively reasonable."  Id. at 701.  "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  Id.

Petitioner's most recent period of post-removal-order detention surpasses 11 months.  Respondents do not contest that Petitioner requested travel documents from the Russian consulate in August 2025, resulting in the August Letter.  Because Petitioner timely applied for travel documents within 90-days of being detained, Respondents' position that the removal period should be expanded beyond August 2025 for failure to comply is unsupported.  Moreover, "district courts to consider this issue ask whether the petitioner has the 'keys to his freedom'" and, therefore, the ability to prevent indefinite detention.  Abdel-Muhti v. Ashcroft, 314 F. Supp. 2d 418, 428 (M.D. Pa. 2004) (citing Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir. 2003)).  Petitioner possessed no such keys.  Unlike Barenboy v. Attorney General, 160 F. App'x 258 (3d

---

also is a clear and unambiguous violation of his statutory rights, constituting an additional basis for excusing the purported prudential exhaustion requirement.  See Saleem v. Att'y Gen., No. 3:25-cv-00227, 2026 WL 628252, at *4 (W.D. Pa. Mar. 6, 2026) ("[P]rudential exhaustion is not necessary where, as here, [petitioner's] 'interest in prompt access to a federal judicial forum outweighs the countervailing institutional interests.'" (quoting Lorenzo v. Bondi, No. 2:25-cv-00923, 2026 WL 84521, at *2 (D.N.M. Jan 12, 2026))).

Cir. 2005), wherein the alien failed to provide documents that would have allowed his removal, nothing in the record shows that Russia sought, or Petitioner could have provided, anything to attain Russian travel documents given his apparent lack of Russian citizenship.

Having now been detained for more than the presumptively reasonable six months, Petitioner also has given good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. The repeated, explicit and definitive refusals to issue travel documents by Russia, the country designated for Petitioner's removal, after years of DHS unsuccessfully seeking travel documents from that country, is more than adequate to shift the burden to Respondents to rebut Petitioner's showing that his removal is not reasonably foreseeable. See, e.g., Saley v. Scott, No. 2:26-cv-00797, 2026 WL 914810, at * 3 (W.D. Wash. Apr. 3, 2026) (burden met where DHS "ha[d] already tried and failed to remove [petitioner] to Russia before . . . and the Russian Consulate has never issued travel documents" for petitioner); Selioutsky v. English, No. 3:26-cv-00307, 2026 WL 1214502, at *2 (N.D. Ind. May 4, 2026) (burden met where petitioner had previously been released from DHS custody after failure to obtain travel documents from Russia and the government made further unsuccessful attempts to obtain travel documents from Russia).

Respondents make no meaningful rebuttal efforts. Respondents' abstract musings that "DHS **could** revisit Kargapolov's removal to Russia," Petitioner "**may** at least be eligible to apply for Russian citizenship" and "**may** be eligible for citizenship of another post-Soviet state" if ineligible for Russian citizenship, Resp. at 12 (emphasis added), are devoid of evidence that Respondents are pursuing these potential avenues, and do not suggest that Respondents are any closer to removing Petitioner today than when he was taken into custody nearly a year ago (or 15 years ago). Moreover, the Declaration does not indicate that removal to Russia is even feasible in the face of two definitive denials of travel documents, including on the basis that Russian

5

citizenship could not be confirmed.  Having now been waiting for Russian travel documents since at least 2010, "ICE is not permitted to hold [Petitioner] indefinitely while it waits for travel documents from Russia." Lapshin v. Bondi, No. 2:25-cv-02245, 2026 WL 71407, at *4 (W.D. Wash. Jan. 9, 2026) (punctuation omitted).  "Whatever remote possibility exists of his future removal to [Russia] is insufficient to justify Petitioner's continued immigration detention." Van Bo v. Bondi, No. 3:26-cv-00028, 2026 WL 891601, at *4 (W.D. Pa. Apr. 1, 2026).

Respondents' argument that there is significant likelihood of Petitioner's removal to some undetermined third country is similarly inadequate to rebut Petitioner's showing that his removal is not reasonably foreseeable.  "[A]s the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Zadvydas, 533 U.S. at 701.  Petitioner has resided in the United States under a permanent order of removal since 2007 without any notable movement toward effectuating that order.  Petitioner has now been detained almost a year, with the Russian consulate indicating as early as August 2025, and again more than two months ago, that it was not a viable removal destination.  Yet, in all that time, Respondents have not lodged a request with any third country to accept Petitioner, and Respondents have not so much as suggested any specific third country to which removal may be theoretically possible.  See Decl. ¶¶ 12, 13.  This is plainly insufficient to show that DHS would be any more successful removing Petitioner to a third country in the reasonably foreseeable future than during the past 18 years, including the cumulative 21 months that Petitioner has now been detained.  See, e.g., Doe v. Oddo, No. 3:25-cv-00353, 2026 WL 873011, at *3 (W.D. Pa. Mar. 30, 2026) ("The only evidence proffered by the Government is its unsuccessful efforts to locate a third country . . . [t]his evidence falls far short of rebutting [p]etitioner's showing."); Rudenko v. Sec'y, Dep't of Homeland Sec., No. 2:25-cv-01157, 2026 WL 291012, at *3 (M.D. Fla. Feb. 4, 2026) (petitioner's showing unrebutted where respondent

6

"do[es] not . . . allege that any country has actually agreed to accept [petitioner] or that Ukraine or Russia routinely accept former Soviet Union citizens from the United States").[6]

Given Petitioner's unrebutted showing that his removal is unlikely in the reasonably foreseeable future, coupled with the more than 11 months that Petitioner has now been detained, Petitioner's continued detention violates § 1231 and a writ of habeas corpus will issue.

## II.    ORDER

For the above reasons, the Petition for Habeas Corpus (Doc. 1) is **GRANTED** and a writ of habeas corpus is issued.  Petitioner's Motion for Leave to File a Reply (Doc. 10) is **DENIED** as moot.  Respondents are **ORDERED** to **RELEASE** Petitioner **DMITRIY KARGAPOLOV** from custody subject to appropriate conditions in accordance with 8 U.S.C. § 1231(a)(3) no later than 3:00 p.m. on May 22, 2026.  Respondents **SHALL CERTIFY COMPLIANCE** with the Court's Order by filing a declaration or affidavit pursuant to 28 U.S.C. § 1746, no later than 5:00 p.m. on May 22, 2026, confirming that Petitioner has been released from custody and that appropriate conditions of supervision have been restored.  **IT IS FURTHER ORDERED** that any motion for fees or costs shall be submitted on or before June 5, 2026, with responses, if any, due 14 days following that motion.

---

[6] Even if a potential third country were identified (none has been) and an application submitted to that country (also not done), that would still likely be an insufficient showing from Respondents here.  See, e.g., C.M.S. v. Oddo, No. 3:25-cv-00216, 2025 WL 3442697, at *3 (W.D. Pa. Dec. 1, 2025) (petitioner's showing unrebutted even where respondents had already "submitted several requests to third countries . . ."); Ebeid v. Warden of Moshannon Valley Processing Ctr., No. 3:25-cv-411J, 2026 WL 292179, at *4 (W.D. Pa. Feb. 4, 2026) (petitioner's showing unrebutted after application where "there is no indication that these [third] countries are considering it at all").

IT IS SO ORDERED.


May 20, 2026                                s/Cathy Bissoon
                                            Cathy Bissoon
                                            Chief United States District Judge


cc (via ECF email notification):

     All Counsel of Record

8